IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA


GEORGE STEINMETZ,                    :    CIVIL ACTION
                                     :    NO. 15-6600
          Plaintiff,                 :
                                     :
     v.                              :
                                     :
MCGRAW-HILL GLOBAL EDUCATION         :
HOLDINGS, LLC, et al.,               :
                                     :
          Defendants.                :


                    M E M O R A N D U M

EDUARDO C. ROBRENO, J.                         December 5, 2016


          Plaintiff George Steinmetz ("Plaintiff" or

"Steinmetz"), a renowned photographer, brings this action for

copyright infringement against Defendants McGraw-Hill Global

Education Holdings, LLC, and McGraw-Hill School Education

Holdings, LLC (collectively, "Defendants" or "MHE").

          Before the Court is Defendants' Motion to Transfer

Venue to the Southern District of New York (ECF No. 47). This

motion is based exclusively on a forum selection clause that

appears in certain pricing agreements between Defendants and a

third-party licensing agency, Corbis Corporation ("Corbis").

Finding that Plaintiff was not a party to the pricing agreements

between Defendants and Corbis, and further that Plaintiff's

copyright infringement claim does not depend on the existence or

terms of those agreements, the Court concludes that the forum selection clause appearing in those agreements is not applicable here. Further, the Court finds that the private and public interest factors outlined in 28 U.S.C. § 1404(a) do not warrant transfer of this action to the Southern District of New York.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff owns the copyrights to a series of photographs that have been registered with the United States Copyright Office or have pending copyright registrations. Am. Compl. ¶¶ 6-7, ECF No. 41. He alleges that, between 1997 and 2010, he sold Defendants limited licenses to use his photographs in particular educational publications. Id. ¶ 8. These licenses "were expressly limited by number of copies, distribution area, language, duration, and/or media." Id.

Exhibit 1 to Plaintiff's Amended Complaint specifically identifies fifty-seven different uses of photographs featured in multiple grade school and college textbooks. See Am. Compl. Ex. 1, ECF No. 4-1. Id. ¶ 8. In addition to the photographs identified in Exhibit 1, which Plaintiff licensed directly to MHE, Plaintiff also entered into agreements authorizing third-party stock photography licensing agencies Corbis Corporation ("Corbis") and National Geographic Society Image Collection ("NGS") to grant limited licenses to

MHE for the use of certain photographs.[1] Am. Compl. ¶ 9. The images licensed to MHE by Corbis and NGS are summarized, respectively, in Exhibits 2 and 3 to the Amended Complaint. See Am. Compl. Ex. 2, ECF No. 41-2; Am. Compl Ex. 3, ECF No. 41-3.

Plaintiff avers that Defendants used the photographs identified in a spreadsheet titled "MHSE 1Step Database, Search Report for Photo Credits Listing 'George Steinmetz'" ("1Step Database"), ECF No. 33-2,[2] "beyond invoice terms, or without any license," Am. Compl. ¶ 10. He claims further that "MHE did not provide Plaintiff with the Image ID or a description of the Steinmetz photograph included in each book, nor did it provide invoice information for these uses." Id. At the heart of Plaintiff's Amended Complaint are his allegations that Defendants "exceeded the licenses and infringed [his] copyrights . . . in various ways," including "printing more copies of the [p]hotographs than authorized; distributing publications containing the [p]hotographs outside the authorized distribution area; publishing the photographs in electronic, ancillary, or derivative publications without permission; publishing the photographs in international editions and foreign

---

[1]    Neither Corbis nor NGS is a party to this action.

[2]    Defendants produced the 1Step Database in response to Plaintiff's Motion to Compel. See ECF No. 27. The 1Step Database is attached to the Amended Complaint as Exhibit 4. See ECF No. 41-4.

publications without permission; and publishing photographs outside the specified time limits. Id. ¶ 17. Plaintiff lists twelve examples of unauthorized printings, see id. ¶ 12, and notes that other photographers and stock photography agencies have brought copyright infringement suits against Defendants based on similar conduct, id. ¶¶ 20, 22, 23.

Based on these allegations, Plaintiff brings one count of copyright infringement in violation of the Copyright Act of 1976. Id. ¶ 26; see also 17 U.S.C. § 501 ("Infringement of Copyright"). He requests a "preliminary and permanent injunction against Defendants," "impoundment of all copies of Plaintiff's photographs used in violation of" Plaintiff's copyrights, actual damages and Defendants' profits from the unauthorized use of Plaintiff's photographs (or statutory damages), and attorneys' fees and costs. See id. at 8-9.

In their Answer to the Amended Complaint, Defendants deny "that any of Steinmetz's photographs in this suit were unlawfully reproduced by MHE." Answer Am. Compl. ¶ 3, ECF No. 46. They specifically deny the allegations in Paragraphs 6 and 7 of the Amended Complaint, including the allegations that Plaintiff owns any exclusive right to the photographs cited in Exhibits 1-3 to the Amended Complaint and that there is evidence that any particular photograph has been registered. Id. ¶¶ 6-7.

4

Defendants also raise a number of affirmative defenses, including, among other things, Plaintiff's lack of standing due to prior assignment or other defects in ownership of the copyrights at issue; Plaintiff's lack of valid and enforceable copyright registrations for the photographs at issue; and Plaintiff's failure to mitigate damages by monitoring the use of his licensed works. Id. at 7-9. Defendants further raise affirmative defenses "of license and/or implied license arising from the specific agreements between MHE and other parties for use of the photographs alleged in the [Amended Complaint], as well as any course of dealing with any such parties," id. at 7; of "license, implied or express, and/or other legal right to continue to possess such copies, records, and/or documents by MHE," id. at 8; and that "Steinmetz's claims for copyright infringement are barred by the doctrine holding that any claim for breach of a covenant in a copyright license sounds in contract and not in copyright," id.

On September 6, 2016, Defendants filed the motion to transfer that is the subject of the instant hearing. ECF No. 47. On September 23, 2016, Plaintiff filed a memorandum of law in opposition to Defendants' motion to transfer. ECF No. 51. On September 30, 2016, Defendants filed a motion for leave to reply in support of their motion to transfer, ECF No. 52, and on

October 4, 2016, Plaintiff filed a response in opposition thereto, ECF No. 54.

On October 4, 2016, the Court entered an order scheduling a hearing to consider Defendants' motion to transfer venue for October 26, 2016. ECF No. 55. In this order, the Court also granted Defendants' motion for leave to file a reply, which was filed the same day. ECF No. 56. On October 6, 2016, Plaintiff filed a motion for leave to file a surreply, ECF No. 57, and on October 23, 2016, Defendants filed a supplemental memorandum in support of their motion to transfer. ECF No. 58.

On October 26, 2016, following a hearing held on the record, the Court granted Plaintiff's motion for leave to file a surreply. ECF No. 59. The surreply was filed the same day. ECF No. 60.

## II.  DISCUSSION

### A.  Legal Standard

A party may move to transfer a civil action pursuant to 28 U.S.C. § 1404, which provides in relevant part as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). Generally, "[t]he burden of establishing the need for transfer . . . rests with the movant," and "in

ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (quoting 1A Pt. 2 James W. Moore & Brett A. Ringle, Federal Practice ¶ 0.345[5], at 4360 (2d ed. 1995)).

A court ordinarily evaluates a § 1404(a) motion by considering factors such as the convenience of the parties and the relevant public interests. Atl. Marine Constr. Co. v. U.S. Dist. Court, 134 S. Ct. 568, 581 (2013). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" Id. (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 31 (1988)). Because forum selection clauses are "bargained for by the parties," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." Id. (alteration in original) (quoting Stewart, 487 U.S. at 33) (Kennedy, J., concurring).

When deciding whether to enforce a forum-selection clause, a district court conducts a two-part analysis. First, the court must determine whether the forum selection clause is valid and enforceable.[3] Atl. Marine, 134 S. Ct. at 581. Second,

---

[3]     Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances," or obtained by "fraud, undue influence, or overweening bargaining power."

the court must consider whether, pursuant to § 1404(a),
"extraordinary circumstances" militate against enforcing the
forum selection clause.[4] Id.

       To evaluate cases that do not fit under the Atlantic
Marine framework--i.e., cases in which no valid and enforceable
forum selection clause exists or applies--courts consider
numerous private and public interest factors. In this Circuit,
the private interest factors include not only the three
enumerated in § 1404(a), but also the following:

> [P]laintiff's forum preference as manifested in the
> original choice; the defendant's preference; whether
> the claim arose elsewhere; the convenience of the
> parties as indicated by their relative physical and
> financial condition; the convenience of the
> witnesses--but only to the extent that the witnesses
> may actually be unavailable for trial in one of the
> fora; and the location of books and records (similarly
> limited to the extent that the files could not be
> produced in the alternative forum).

Jumara, 55 F.3d at 879 (citations omitted). The public interest
factors include the following:

---

Foster v. Chesapeake Ins. Co., 933 F.2d 1207, 1219 (3d Cir.
1991) (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1,
10, 12 (1972)).

[4]      In considering whether such extraordinary
circumstances exist, a court "may consider arguments about
public-interest factors only," including "the administrative
difficulties flowing from court congestion; the local interest
in having localized controversies decided at home; [and] the
interest in having the trial of a diversity case in a forum that
is at home with the law." Atl. Marine, 134 S. Ct. at 581 n.6,
582 (alteration in original) (quoting Piper Aircraft Co. v.
Reyno, 454 U.S. 235, 241 n.6 (1981)).

> [T]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80 (citations omitted).

    B.    <u>The Parties' Arguments and Similar Cases Within This District</u>

       Defendants move to transfer the instant case to the Southern District of New York on the basis that the "overwhelming majority" of Plaintiff's claims are subject to a "mandatory, exclusive forum-selection clause that applies to all of Corbis'[s] transactions with [MHE]." Defs.' Mem. Law at 2, ECF No. 47-1. Specifically, Defendants argue that "more than 80 percent" of the claims in this case--that is, 294 out of 367 total claims--derive from transactions between MHE and Corbis that are covered by a forum selection clause. Id. at 1.

       Plaintiff responds that the case should not be transferred because "[n]o claim in this case arises out of any Steinmetz agreement with Corbis." Pl.'s Mem. Law at 4, ECF No. 51. Plaintiff argues that "MHE has not carried its burden of proving that a Corbis invoice exists for each of the 294 claims" upon which Defendants rely, and further that "[w]holly unlicensed uses clearly are not subject to any contractual forum

selection clause." Id. at 2. Even for those claims covered by
Corbis invoices, Plaintiff argues that "the copyright
infringement dispute between Steinmetz and MHE does not require
or rely on interpretation of MHE's pricing agreements with
Corbis, in which the forum selection clause appears," id. at 18,
and also that Defendants have failed to "connect the dots"
between the pricing agreements containing the forum selection
clause and the infringement claims at issue in this case, id. at
20.

      In further support of his argument, Plaintiff claims
that he "did not have notice of the forum selection clauses that
MHE now relies upon" because he "did not know about the
existence of the MHE/Corbis pricing agreements before this
litigation." Id. at 3. He argues, moreover, that he cannot be
held to the terms of an agreement made exclusively between
Defendants and a third party. See id. Plaintiff also emphasizes
language in the forum selection clause limiting its reach to
only disputes "regarding this Agreement." Beall Decl. Ex. A
¶ 12.3, ECF No. 47-2 (emphasis added).

      In their reply, Defendants do not expressly link the
Corbis pricing agreements to Plaintiff's copyright infringement
claims. Instead, they argue only that "[i]n light of the
instrumental nature of [MHE]'s relationship with Corbis, each
and every claim by the Plaintiff pertaining to [MHE]'s use of a

10

Corbis photo necessarily implicates [MHE]'s contracts with
Corbis, and the record in this case, and others, demonstrates
that all of those contracts require any dispute to be litigated
in New York." Defs.' Reply at 8, ECF No. 56.

Several courts within this District have recently
considered similar motions to transfer cases to the Southern
District of New York on the basis of Corbis forum selection
clauses. Some of these courts have granted the motions to
transfer, typically on the basis that the plaintiffs in those
cases brought claims for breach of contract in addition to
claims for copyright infringement. See, e.g., Lefkowitz v.
McGraw-Hill Companies, Inc., No. 13-1661, 2013 WL 3061549, at *4
(E.D. Pa. June 19, 2013) (Schiller, J.) (granting motion on the
ground that "[the plaintiff] cannot sue McGraw-Hill for breach
of contract but then ignore the forum selection in the same
agreement"); Lefkowitz v. John Wiley & Sons, Inc., No. 13-1662,
2013 WL 4079923, at *2 (E.D. Pa. Aug. 13, 2013) (Baylson, J.)
(granting motion and emphasizing that "even if the forum
selection clause did not apply to copyright claims, the clause
would still apply to this action because Plaintiff alleges a
breach of contract claim in addition to his copyright claims");
Jon Feingersh Photography, Inc. v. Houghton Mifflin Harcourt
Pub. Co., No. 13-2378, 2014 WL 716723, at *4 (E.D. Pa. Feb. 25,
2014) (Slomsky, J.) (expressly agreeing with Judge Schiller and

Judge Baylson's reasoning and adding that, "[m]ost importantly, Plaintiff concedes that the forum selection clause applies to 82 of the 121 licenses at issue, the majority of the licenses in controversy").

Other courts, however, have denied the motions to transfer, often on the basis that the forum selection clause applies to too few claims to warrant transfer. See, e.g., Jon Feingersh Photography, Inc. v. Pearson Educ., Inc., 978 F. Supp. 2d 463, 468 (E.D. Pa. 2013) (Brody, J.) (denying motion to transfer because "[t]his case contains both claims that are not covered by any forum selection clause, and claims that are covered by conflicting forum selection clauses," and thus "[i]t would be an immense waste of judicial and party resources to litigate these claims in multiple forums"); Eastcott v. McGraw-Hill Glob. Educ. Holdings, LLC, No. 16-904, 2016 WL 3959076, at *1 (E.D. Pa. July 22, 2016) (McHugh, J.) (denying motion to transfer in large part because "[t]he forum selection clause only implicates a fraction of the claims in this case--19 of the 274 total claims or less than 7% to be exact").

C.   Applicability of Atlantic Marine and Factors Under 28 U.S.C. § 1404(a)

There are 367 total claims at issue in this case. Of those 367 total claims, 294 derive from transactions between MHE

12

and Corbis. See Am. Compl. Ex. 2, ECF No. 41-2. Of those 294

Corbis claims, MHE has produced invoices for 180.[5]

> 1. Plaintiff was not a party to the pricing agreements
> between Corbis and Defendants.

Two separate types of pricing agreements between

Corbis and Defendants are relevant to the Court's consideration

of the motion to transfer venue: (1) Corbis invoices ("the

invoices"), and (2) Corbis vendor agreements, known as

"Preferred Pricing Agreements" or "PPAs." See Mot. Transfer,

Burger Decl. Ex. C, ECF No. 47-4; Norton Decl. Ex. A, ECF No.

47-6. Each of the Corbis invoices contains a boilerplate

reference to Corbis's online "Terms and Conditions," which

incorporates into the invoice the following forum selection

clause:

> Any dispute regarding this Agreement shall be governed
> by the laws of the State of New York, and by Titles
> 15, 17 and 35 of the U.S.C., as amended, and the
> parties agree to accept the exclusive jurisdiction of
> the state and federal courts located in New York, New
> York, regardless of conflicts of laws.

Burger Decl. Ex. B ¶ 21, ECF No. 47-4. All of the PPAs include a

forum selection clause that is exactly identical to the forum

---

[5]       MHE denies use of the photographs covered by remaining
Corbis claims and therefore states that no invoices exist for
these claims. In other words, for each of the Corbis claims, MHE
contends either that the claim was covered by an invoice
containing a forum selection clause, or that there was no use
and therefore no invoice. See Mot. Transfer Hr'g Tr. 6:3-7, ECF
No. 63.

selection clause incorporated into the invoices. See Beacher Decl. Ex. A at 9, ECF No. 47-12; id. Ex. B at 8; id. Ex. C at 11.

The parties do not dispute any of the foregoing facts. Further, they do not dispute that the invoices are relevant to the copyright claim in this lawsuit, nor do they dispute that the invoices contain a forum selection clause.[6] Finally, the parties agree that the 58 direct-invoice claims between Plaintiff and Defendants do not contain a forum selection clause, see Am. Compl. Ex. 1, ECF No. 41-1, and also that the 15 NGS claims, see Am. Compl. Ex. 3, ECF No. 41-3, do not support transfer.

Most importantly, Corbis is not a party to this case, and no one alleges that Corbis is Plaintiff's agent.[7] To the contrary, Defendants have conceded that Plaintiff is nothing more than a third-party beneficiary to all of the pricing agreements between Defendants and Corbis. See Mot. Transfer Hr'g Tr. 29-30. Accordingly, the forum selection clause in this case

_____

[6]      Though the parties dispute the relevance of the PPAs to the copyright infringement claim, this dispute does not impact the Court's decision on the motion to transfer because this decision is not based on any distinction between claims covered by invoices and claims covered by the PPAs.

[7]      Defendants conceded at oral argument that they never raised this argument in their papers. See Mot. Transfer Hr'g Tr. 28:20-29:23. They further clarified that they are not making an argument based on any "direct agency" relationship between Plaintiff and Corbis. See id. at 30:6-8.

appears not in agreements between Plaintiff and Defendants--and
not in agreements between Plaintiff's agent and Defendants--but
instead only in agreements between Defendants and a third party.

The language of the forum selection clause clearly
limits its own applicability to "[a]ny dispute <u>regarding this
Agreement</u>." The forum selection clause thus is applicable only
to the pricing agreements between Defendants and Corbis; it is
not broadly applicable to any type of intellectual property
dispute that conceivably could arise between Defendants and the
owner of any intellectual property that Defendants might license
from Corbis.

Absent any allegation that Plaintiff was a party to
the pricing agreements between Defendants and Corbis or that
Corbis was acting as Plaintiff's agent in this case, the Court
declines to hold Plaintiff to the terms of a forum selection
clause appearing in agreements to which he was not a party and
with which he had no opportunity to agree or disagree. In
<u>Atlantic Marine</u>, the Supreme Court emphasized the parties'
<u>agreement</u> to be bound to the forum selection clause:

> When parties have contracted in advance to litigate
> disputes in a particular forum, courts should not
> unnecessarily disrupt the parties' settled
> expectations. A forum-selection clause, after all, may
> have figured centrally in the parties' negotiations
> and may have affected how they set monetary and other
> contractual terms; it may, in fact, have been a
> critical factor in their agreement to do business
> together in the first place. In all but the most

unusual cases, therefore, "the interest of justice" is
served by holding parties to their bargain.

Atl. Marine, 134 S. Ct. at 583. Here, where the relevant parties
to the dispute are Plaintiff and Defendants, the pricing
agreements between Corbis and Defendants in no way "'represent[]
the parties' agreement as to the most proper forum'" because
they were never "'bargained for by the parties'" at all. Id. at
581 (quoting Stewart, 487 U.S. at 31, 33 (1988) (Kennedy, J.,
concurring)). The forum selection clause at issue in this case
could not possibly have "been a critical factor in [Plaintiff's
and Defendants'] agreement to do business together," id. at 583,
because Plaintiff and Defendants never agreed to do business
together; Plaintiff may not even have been aware that the forum
selection clause existed, let alone bargained for its terms.

2.    Plaintiff's copyright infringement claims do not
depend on the existence or terms of the pricing
agreements.

The Court disagrees with Defendants that "[i]n light
of the instrumental nature of [Defendants'] relationship with
Corbis, each and every claim by Plaintiff pertaining to
[Defendants'] use of a Corbis photo necessarily implicates
[Defendants'] contracts with Corbis." Defs.' Reply at 8.
Instead, the Court finds that the pricing agreements between
Defendants and Corbis are relevant to the copyright dispute
between Plaintiff and Defendants only insofar as these

agreements might constitute evidence as to whether Defendants exceeded the scope of their licenses for certain of Plaintiff's photographs in violation of the Copyright Act. Though perhaps useful evidence in this regard,[8] the invoices do not constitute an element of copyright infringement, and therefore Plaintiff's copyright claim does not necessarily implicate any agreement with any third party.

Regardless of whether Defendants use the invoices as evidence supporting their defense, Plaintiff's copyright infringement claim itself relies only upon (1) his ownership of valid copyrights over the photographs at issue, and (2) Defendants' unauthorized copying of original elements of Plaintiff's work. See Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, 307 F.3d 197, 206 (3d Cir. 2002) ("To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work."). Neither of these elements depends on the existence or terms of the Corbis invoices; with or without the invoices, it still may be the case that Plaintiff validly owns copyrights to

---

[8]     The parties agreed at oral argument that the invoices are relevant to this action only insofar as they constitute an "affirmative defense" to Plaintiff's copyright infringement claim. Mot. Transfer Hr'g Tr. 7:18-20; 23:8-10. The Court expresses no opinion at this time as to the evidentiary value, if any, of any pricing agreement between Defendants and Corbis.

the photographs at issue and Defendants copied those photographs without the requisite authorization. For example, Defendants could have used Plaintiff's copyrighted photographs without any license at all, or Defendants could have used Plaintiff's copyrighted photographs in a manner that exceeds the scope of licenses other than the Corbis pricing agreements.[9]

Whether Defendants copied Plaintiff's copyrighted work without authorization is a separate and distinct inquiry from whether Defendants can show that they had a license for use. In other words, although the license may provide a defense to Plaintiff's complaint of unauthorized copying, the license itself does not give rise to an action under the Copyright Act.[10]

---

[9]     This is precisely what Plaintiff alleges with regard to the 58 direct-invoice claims and 15 NGS claims. The fact that the Corbis claims outnumber the direct-invoice and NGS claims does not transform the essential nature of Plaintiff's action for copyright infringement--which depends only on Plaintiff's valid copyright ownership and Defendants' unauthorized copying-- into one that depends on the terms of pricing agreements between Defendants and a third-party licensing agency.

[10]    Though the question of whether a case "arises under" the Copyright Act has never been a simple one, courts have generally taken care to distinguish between copyright claims and contract claims, particularly for purposes of establishing federal jurisdiction:

   [W]here a contract grants the defendant the right to use a work and the dispute is over the terms of the contract, the adequacy of consideration, contractual damages, or matters that would not constitute copyright infringement in the absence of the license, no federal jurisdiction exists under the Copyright

Plaintiff's ownership of his photographs is premised not upon
any contract, but rather upon his status as creator of the
photographs. See Cmty. for Creative Non-Violence v. Reid, 490
U.S. 730, 737 (1989) ("As a general rule, the author is the
party who actually creates the work, that is, the person who
translates an idea into a fixed, tangible expression entitled to
copyright protection." (citing 17 U.S.C. § 102)). Moreover,
Plaintiff's exclusive rights as copyright owner are conferred
not by any contract, license, or invoice, but instead by 17
U.S.C. §§ 106-122--and it is specifically on these statutory
sections that Plaintiff's claim against Defendants relies. See,
e.g., 17 U.S.C. § 501(a) ("Anyone who violates any of the
exclusive rights of the copyright owner as provided by sections
106 through 122 or of the author as provided in section

---

 Act, even when the complaint is couched as one for
 infringement. . . .

 . . . .

 By contrast, an action will arise under the Copyright
 Act where there is no contract between the parties, or
 where a contract has expired, where a licensee uses a
 work in a manner alleged to be outside the scope of
 the license, or where the contract has already been
 terminated for breach of a material condition, a claim
 of infringement will "arise under" the Copyright Act
 regardless of whether the contract must be construed
 before determining infringement or ownership rights.

5 Patry on Copyright § 17:41 (emphasis added) (footnotes
omitted).

106A(a) . . . is an infringer of the copyright or right of the author . . . .").

*     *     *

In light of the foregoing, the Court concludes that Plaintiff's claim for copyright infringement does not rely on the Corbis invoices because Plaintiff is not a party to those invoices and has not asserted any rights under those invoices.[11] See Corcovado Music Corp. v. Hollis Music, Inc., 981 F.2d 679, 682 (2d Cir. 1993) ("[W]here a plaintiff sues for copyright infringement and asserts no rights under a contract with the defendant containing a forum-selection clause, the forum-selection clause has no effect."); Light v. Taylor, 317 F. App'x 82, 83–84 (2d Cir. 2009) (summary order) ("Forum selection clauses are enforced only when they encompass the claim at issue. The relevant clause here applies only to disputes

_____

[11]      It is on this point that the Court disagrees with the court's reasoning in Keller v. McGraw-Hill Global Education Holding, LLC, No. 16-1778, 2016 WL 4035613 (E.D. Pa. July 28, 2016). In that case, the court found that the Corbis forum selection clause was controlling because "Plaintiff's Complaint . . . allege[d] Defendants violated Plaintiff's copyrights because of the existence of the [Corbis invoices]." Id. at *5; see also id. at *6 ("Plaintiff's copyright infringement claims are not independent of the Corbis [invoices] but rather dependent on them."). This conclusion was evidently based on the court's finding that "the validity of Plaintiff's claims will depend on the terms of the Licenses." Id. Though this Court agrees that the success of Plaintiff's copyright infringement claims may depend at least in part on the terms of the licenses, this Court finds that the validity of these claims is not dependent on the Corbis invoices.

20

'regarding' the agreement. [The plaintiff]'s copyright claims are not governed by the forum selection clause because they do not encompass a dispute with respect to the Corbis agreement." (citation omitted)).[12]

> 3. Consideration of the § 1404(a) factors does not warrant transfer to the Southern District of New York.

Finding that the Corbis forum selection clause does not apply in this case, the Court declines to evaluate Defendants' motion to transfer under the Atlantic Marine framework, and instead proceeds to consider the motion with respect to the private and public interest factors traditionally balanced in considering § 1404 motions. See Jumara, 55 F.3d at 879-80. The Court notes that Plaintiff's choice of forum is not to be "lightly disturbed," Jumara, 55 F.3d at 879, and further that Defendants' papers hardly address the § 1404(a) factors at

---

[12]       Other courts within this District granting motions to transfer in similar cases have explicitly noted that their decisions to transfer might well have been different had those cases not involved claims for breach of contract. See, e.g., Lefkowitz, 2013 WL 3061549, at *4 (concluding, based on the fact that "Lefkowitz [was] suing McGraw-Hill for breach of contract based on licenses McGraw-Hill had obtained from Corbis for Lefkowitz's copyrighted works," that "Lefkowitz [could not] sue McGraw-Hill for breach of contract but then ignore the forum selection in the same agreement"); Lefkowitz, 2013 WL 4079923, at *1 ("[E]ven if the forum selection clause did not apply to copyright claims, the clause would still apply to this action because Plaintiff alleges a breach of contract claim in addition to his copyright claims.").

all. Though Defendants claim in passing that "none of the witnesses germane to [the claims in this case] live or work in Philadelphia," Mot. Transfer at 11, they provide no explanation whatsoever as to why Manhattan would be a more convenient forum than Philadelphia for the witnesses they expect to call. Defendants offer no comment regarding the location of pertinent documents, nor do they discuss the relative financial conditions of the parties. Given Defendants' silence with respect to nearly all relevant factors, the Court finds that Defendants have failed to carry the heavy burden necessary to disturb Plaintiff's choice of forum.

**III. CONCLUSION**

For the foregoing reasons, the Court will deny Defendants' motion to transfer venue to the United States District Court for the Southern District of New York.

An appropriate order follows.